BAYBANK HARVARD TRUST COMPANY, executor, & another[1]
*vs.* DOROTHY ROBB GRANT & another.[2]

Middlesex.   February 12, 1987. — March 16, 1987.

Present: GREANEY, C.J., GRANT, & PERRETTA, JJ.

*Devise and Legacy,* Specific legacy, Ademption.

Legacies of funds in a specific bank account were adeemed by the testatrix's transfer of the funds, two years before her death, to a different bank in which they were invested from time to time in certificates of deposit. [654-656]

PETITION for probate filed in the Middlesex Division of the Probate and Family Court Department on April 22, 1983.

A proceeding for allowance of the executor's account was heard by *William Highgas, Jr., J.,* on a motion for summary judgment.

*R. Lisa DiLuna (Virginia Aldrich* with her) for the plaintiffs.
*Edward P. Mannix* for the defendants.

PERRETTA, J. This appeal raises the question[3] whether legacies of funds in a specific bank account were adeemed by reason of the fact that more than two years prior to her death, the testatrix withdrew the entire balance from that specific account, deposited those funds in her checking account at another bank, BayBank Harvard Trust Company (BayBank), and then, from time to time and as the amount in that checking account grew, invested the money in certificates of deposit. On cross motions for summary judgment, a probate judge concluded that because the funds which were the subject of the

---

[1] Anne Stafford.

[2] Pamela Robb.

[3] At oral argument, the defendants waived any contention that the plaintiffs lacked standing to appeal from the judgment pursuant to G. L. c. 215, § 9.

specific legacies could "be traced in part to certain Certificates of Deposit at Baybank," those legacies were not adeemed. We hold that as the legacies are specific and cannot be satisfied out of property bequeathed by the testatrix, the judgment must be reversed.

As here pertinent, the testatrix's will, dated July 19, 1978, provides that her debts, taxes, administration charges, and funeral expenses are to be paid from her "checking and savings account" with BayBank and that Anne Stafford is to receive "any remaining monies . . . in the aforesaid" BayBank. Paragraph three of the will provides for certain gifts to Dorothy Robb and Pamela Robb, the grandnieces of the testatrix's deceased husband. Among those gifts, "in equal shares," are the following: "all monies on deposit with the Martha's Vineyard Cooperative Bank and Dukes County Savings Bank; my shares of stock with the Martha's Vineyard National Bank and the Bank of Citicorp."

Following the execution of her will, the testatrix gave her stock in Martha's Vineyard National Bank to the Robbs, in equal shares. She also transferred to them in equal amounts her funds on deposit in the Martha's Vineyard Cooperative Bank. Additionally, she gave them certain other items of tangible personal property.

On September 3, 1980, the testatrix instructed the Dukes County Savings Bank to withdraw the balance of the funds in her account ($17,380.88) and transfer the money into her checking account at BayBank. Eight days later, the testatrix purchased a $20,000 six-month money market certificate from BayBank. When the testatrix died on April 4, 1983, she had three six-month certificates of deposit with BayBank in a total amount of $64,192.88, of which the Robbs claim $17,380.88.

No one disputes that the gift in question is a specific legacy. See *Towle* v. *Swasey,* 106 Mass. 100, 106 (1870); *Tomlinson* v. *Bury,* 145 Mass. 346, 347-348 (1887); *Walsh* v. *Gillespie,* 338 Mass. 278, 279 (1959). That fact is dispositive of the dispute. "The distinctive characteristic of such a legacy is its liability to ademption or extinction. In order to make a specific legacy effective, the property bequeathed must be in existence

and owned by the testator at the time of his death. As was said in *Tomlinson* v. *Bury, supra* (348): 'If the testator subsequently parts with the property, even if he exchanges it for other property or purchases other property with the proceeds, the legatee has no claim on the estate for the value of his legacy. The legacy is adeemed by the act of the testator.'" *Moffatt* v. *Heon,* 242 Mass. 201, 203-204 (1922). When a testator disposes of the subject of a specific legacy during his lifetime, that legacy is held to be adeemed, "whatever may have been the intent or motive of the testator in so doing." *Richards* v. *Humphreys,* 15 Pick. 133, 135 (1833).

Quoting from *Richards, supra,* and citing *Moffatt, supra,* the court stated in *Walsh* v. *Gillespie,* 338 Mass. at 280: "There can be no doubt, therefore, that in common with the great weight of modern authority this court is committed to the 'identity' theory and ordinarily looks only to the existence or nonexistence of the subject matter of the specific legacy."[4] But as with most rules, there are exceptions. *Walsh* itself presented circumstances which led the court to conclude that "an application of the 'identity' theory to a case like the present would be unjust." *Id.* at 282. There a conservator was appointed five years after the testatrix had executed her will. The only available asset which could be readily used for her support was stock which was the subject of the specific legacy to a principal object of the testatrix's bounty. The sale of the stock "did not operate as an ademption as to the unexpended balance remaining in . . . [the conservator's] hands at the death of the testatrix." *Id.* at 284. See also *Bostwick* v. *Hurstel,* 364 Mass. 282, 295-296 (1973), where sufficiently compelling circumstances again led the court to conclude, without violation of the "identity" doctrine, that a specific legacy had not been adeemed even though the testatrix had not had continuous ownership of the property (stock) but had ample shares for the gift at the time of her will and at her death.

---

[4] We do not, therefore, comment upon those cases cited by the Robbs from jurisdictions which do not adhere to the "identity" doctrine. See, e.g., *Willis* v. *Barrow,* 218 Ala. 549 (1929); *Prendergast* v. *Walsh,* 58 N.J. Eq. 149 (1899); *In re Estate of Hall,* 60 N.J. Super. 597 (1960).

In an attempt to bring themselves within the holdings of *Walsh* and *Bostwick,* the Robbs argue that the gift was not adeemed by the testatrix's transfer of her funds from the Dukes County Savings Bank to BayBank and the subsequent purchases of certificates of deposit, because the transfer was made as matter of convenience when the testatrix moved from Martha's Vineyard to Concord[5] and because those transferred funds can bè traced to a specific certificate of deposit. We see nothing in these facts to bring the case within the holdings of *Walsh* and *Bostwick, supra,* especially in view of the circumstances that the testatrix described herself in her 1978 will and codicil as being of Concord, that she transferred the funds in 1980, and that in the following three years preceding her death she did not change her will.

Accordingly, the judgment is reversed, and the matter is remanded to the Probate Court for the entry of a judgment consistent with this opinion.

*So ordered.*

---

[5] Because this factual assertion, even if true, is insufficient to prevent ademption, we need not consider the fact that it is contained in a memorandum of law signed by counsel and submitted in support of the Robbs' motion for summary judgment, rather than in an affidavit conforming to Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974).