CLARA M. LIEVI & another, executors, *vs.*
LOUISE L. SHERIDAN & another.

Suffolk.    February 10, 1972. — April 19, 1972.

Present: TAURO, C.J., SPIEGEL, REARDON, & BRAUCHER, JJ.

*Devise and Legacy,* Direction for sale of real estate, Whether devise or legacy.

Warranted findings that two of five beneficiaries under a will which directed sale of real property and distribution of the proceeds among the five beneficiaries insisted that the property be sold at a certain price justified a conclusion that such insistence was the major cause of delay in the sale of the property. [624]

Lievi *v.* Sheridan.

Where a will directed that real estate be sold and the proceeds be divided among certain beneficiaries, the real estate was constructively converted into personalty upon the death of the testatrix and the gift was not a devise but a bequest of money, and an accounting by the executor for income and management of the property under G. L. c. 206, § 8, was not required. [624–625]

PETITION filed in the Probate Court for the county of Suffolk on January 28, 1971, for the allowance of an account.

The case was heard by *Wilson, J.*

*Thomas J. Carens* for the contestants.

*William V. McDonough, Jr.,* for the proponents.

REARDON, J. This is an appeal from a decree of the Probate Court for Suffolk County allowing the first and final account of Charles J. Lievi and Clara M. Lievi, executors under the will of Louise Lievi, late of Boston. The appellants are two of the daughters of the testatrix. The will, under which the appellants assert rights, provides in part as follows: "I direct that my Executors sell real property at #55–#55A Sanford Street, Mattapan, Massachusetts and the proceeds from sale of said property, I give, devise and bequeath equally between my daughters, namely: Clara M. Lievi, Elena M. Roche, Louise L. Sheridan, Genevieve M. Delaney, Dorothea M. Gallagher. . . . All the rest and residue of my estate both real and personal property of every name and nature I give, devise and bequeath to my daughter Clara M. Lievi."

The testatrix died on May 14, 1968. The petition for probate was filed on September 9, 1968. The bond was filed on June 27, 1968, and the will was allowed on May 21, 1969. The petition was assented to by all eight children of the testatrix.

Upon request, the judge filed a report of material facts, the following of which are relevant to the issues presented here.

"The First and Final Account filed January 28, 1971 listed as the only item in Schedule A the 'amount of real

property converted to cash' (on December 11, 1970) as $25,000 plus a small tax adjustment of $66. The Account was assented to by the three sons of the . . . [testatrix] and by three of her five daughters, but not by the daughters Genevieve and Louise.

"At the time of her mother's death Clara the present co-executrix was living with her mother, the Testatrix, rent free on the top floor of the Sanford Street property where Clara had moved in with her mother and father in 1934. Another daughter Elena at the time of her mother's death lived on the first floor where she had lived also rent free for some twenty years. Following the death of the Testatrix on May 14, 1968 there was some delay in actual probate of the will partly due to the illness of the elder Mr. McDonough, the attorney. With the assent of all parties the will was finally allowed and co-executors appointed May 21, 1969.

"Meanwhile efforts had been made for sale of the house. An appraiser stated the property was worth $18,000. The daughter Louise informed her brother Charles the co-executor that she had a contractor she felt would pay $35,000. . . . Charles offered the house to both Louise and Genevieve for $25,000. Genevieve insisted both to her brother Charles and to her sister Dorothea that the house was worth $35,000.

"Several people made inquiries but did not care to even examine the property at a price of $35,000.

"Eventually sale was made to the daughter Elena for $25,000, a price finally agreed upon by all the children of the Testatrix, although Elena was unable to fully finance the purchase for a matter of some months. The sale was consummated on December 11, 1970.

"Delay in actual sale was initially because illness of the attorney delayed probate of the will; thereafter there was insistence by two of the five daughters on a price of $35,000; finally . . . [there] were some months of delay in actual financing by the daughter Elena who became the eventual purchaser after her sister Clara had expressed an intention to turn over her one-fifth share to Elena.

"I find that the co-executor acted with all reasonable promptness under the circumstances and that the major cause of delay was the insistence on a sale price of $35,000 by the two sisters who are now in opposition to allowance of the account as stated.

"I find that the gift of the property was not a devise of real estate but a bequest of money to be divided as directed. I find the real estate was 'constructively converted into . . . [personalty] from the time of death.' "

1. The appellants argue that the judge was plainly wrong in finding that the major cause of the delay of some thirty-one months in the sale of the premises was their insistence on a sale price of $35,000 for the property. We do not set aside the material facts found by the judge unless the evidence shows them to be plainly wrong. *Tewksbury* v. *Tewksbury,* 222 Mass. 595, 596. *Greeley* v. *O'Connor,* 294 Mass. 527, 529. *Anderson* v. *Anderson,* 354 Mass. 565, 568. Here there was sufficient evidence for the judge to find as he did that the appellants insisted that the house be sold for $35,000. It was open to him to find that this was a major cause of the delay in the final sale. Testimony to that effect was given by Clara Lievi, and while Genevieve Delaney, one of the appellants, denied that she insisted that the sale price be no less than $35,000, she conceded that she asserted to her sisters that "it was worth more than $25,000." Somewhat similar testimony was given by Charles Lievi on statements made by the appellant Louise Sheridan to him. A review of the transcript indicates that the judge as a trier of fact could have found as he did.

2. It is also contended by the appellants that the judge could not ignore G. L. c. 206, § 8, which provides as follows: "If real estate of a deceased person is used, occupied or taken charge of by an executor or administrator, he shall account for the income and management thereof in the same manner as in the case of personal property." However, the will provides that the real estate be sold and the proceeds be divided among the five daughters of the testatrix. The judge properly ruled that "the gift of the

property was not a devise of real estate but a bequest of money" to be divided as directed. *Johnson* v. *Tacey,* 326 Mass. 628, 629–630. Under the will the real estate was constructively converted into personalty upon the death of the testatrix. *Thissell* v. *Schillinger,* 186 Mass. 180, 185. *Baker* v. *Commissioner of Corps. & Taxn.* 253 Mass. 130, 134. The appellants according to the final account received their proportionate share of the proceeds of the sale.

On the assumption that rents should have been collected, an assumption which we make solely for the consideration of the point, such rents would go, under the clause disposing of the residue of the estate, to the residuary legatee, Clara M. Lievi, who has assented to the account. *Towle* v. *Swasey,* 106 Mass. 100, 107. *Brooks* v. *Jackson,* 125 Mass. 307, 309. There was no error.

*Decree affirmed.*