## Jane Kelley *vs.* Donald B. Neilson.[1]

No. 98-P-1257.

Middlesex. January 19, 2000. - April 13, 2000.

Present: Jacobs, Gillerman, & Gelinas, JJ.

Further appellate review granted. 432 Mass. 1103 (2000).

*Devise and Legacy,* Real property, Ademption, Specific legacy. *Real Property,* Ownership, Purchase and sale agreement.

Where certain real property was in existence and owned by a testatrix at the time of her death, her devise of the property was not adeemed by the executor's sale of the property, some four months after the testatrix died, under a purchase and sale agreement entered into after the will was executed but before the testatrix's death: the devisee was entitled to the proceeds of the sale. [117-118]

Civil action commenced in the Middlesex Division of the Probate and Family Court Department on March 24, 1997.

The case was heard by *Judith Nelson Dilday,* J., on a motion for summary judgment.

*Paul R. Chomko* for the plaintiff.

*Joseph Melone* for the defendant.

Gillerman, J. In her complaint, the plaintiff sought an order directing the defendant, the executor under the will of Aileen Neilson (plaintiff's grandmother[2]), to relinquish to the plaintiff the proceeds from the sale of 18-20 Laurel Avenue in Waltham (property). The plaintiff claimed that the proceeds of the sale belonged to her since the property had been specifically devised to her under the last will of her grandmother (testatrix) dated January 5, 1993. (The fact of the specific devise is not in dispute.)

The defendant filed a motion for summary judgment, arguing

---

[1]Individually and as executor of the estate of Aileen Neilson.

[2]In her brief, the plaintiff describes herself as the niece of the testatrix. The will of the testatrix describes the plaintiff as her granddaughter. We have assumed that the description in the will is accurate.

that the specific devise of the property to the plaintiff had been adeemed. The motion was allowed by the judge, and the plaintiff appealed.

We summarize additional, undisputed material facts. On November 28, 1995, almost three years after the testatrix signed her last will, she signed a purchase and sale agreement (agreement) which provided for the sale of the property to Bonnie Neilson, another granddaughter of the testatrix, and Sean B. Lane. The closing was to take place on January 16, 1996. On November 30, 1995, the testatrix signed the deed for the closing, as well as a special power of attorney in favor of her attorney, David L. Mitchell. The special limited power of attorney was limited to the acts necessary to the performance of the purchase and sale agreement.[3]

On January 16, 1996, Mr. Mitchell, as the attorney-in-fact for the testatrix, signed an. extension of the agreement to January 30, 1996. The testatrix died on January 20, 1996.

On January 30, Mr. Mitchell, as attorney for the estate of the testatrix, and Ms. Amy Weil, on behalf of the buyers, signed an extension to February 29, 1996, in order to permit the estate to remove title defects, as permitted by the agreement. The agreement was further extended on February 29 to May 6, 1996, and on May 6 the agreement was extended to May 17. On May 17, the transaction finally closed. The deed delivered to the buyers was signed by the defendant, now executor under the will of the testatrix with a power of sale provided in clause eight of the will. The deed previously signed by the testatrix was not used.

As of the death of the testatrix on January 20, 1996, then, the property was subject to a purchase and sale agreement, with an extension of the closing date to January 30, 1996, signed by Mitchell acting under the authority of his special power of attorney.

---

[3]The plaintiff's brief states that the deed signed by the testatrix was placed in escrow, but there is nothing in the record to support that assertion. Given the circumstances just described in the text, it is likely that the testatrix delivered the deed to her attorney, Mitchell, on November 30, 1995, in the expectation that the deed would be available for the closing on January 16, 1996. Mitchell's authority as agent for the testatrix expired on the death of the testatrix on January 20, 1996. See *Gallup* v. *Barton*, 313 Mass. 379, 381-382 (1943).

The brief of the defendant also refers to other "facts" which have no support in the record. We do not consider such material. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

It is settled law in Massachusetts that if the testatrix, during her lifetime, disposes of the subject of a specific legacy or devise in her will, the "legacy or devise is . . . adeemed 'whatever may have been the intent or motive of the testator in doing so.' " *Wasserman* v. *Cohen,* 414 Mass. 172, 174 (1993), quoting from *Walsh* v. *Gillespie,* 338 Mass. 278, 280 (1959). See *Walsh* v. *Gillespie, supra* ("[I]n common with the great weight of modern authority [Massachusetts] court[s] [are] committed to the 'identity' theory and ordinarily look[] only to the existence or nonexistence of the subject matter of the specific legacy"). " '[I]dentity' and not 'intent' governs ademption cases." *Wasserman* v. *Cohen, supra* at 174 n.3, quoting from *Bostwick* v. *Hurstel,* 364 Mass. 282, 296 (1973).[4] The question is whether the property bequeathed to the plaintiff was "in existence and owned" by the testatrix at the time of her death. *Wasserman* v. *Cohen, supra* at 174. *BayBank Harvard Trust Co.* v. *Grant,* 23 Mass. App. Ct. 653, 654-655 (1987). Those rules have been followed for over 160 years, see *Wasserman* v. *Cohen, supra,* and "stability in the field of trusts and estates requires that we continue the doctrine." *Id.* at 175.

We must put to one side speculation and possible inferences about the intent of the testatrix, and focus only on the question whether the property "was in existence and owned" by the testatrix at her death. "The focus is on the actual existence or nonexistence of the bequeathed property, and not on the intent of the testator with respect to it." *Wasserman* v. *Cohen, supra* at 174. We conclude that the property was in existence and owned by the testatrix at her death, and we reverse the allowance of the defendant's motion for summary judgment.

In Massachusetts, once a purchase and sale agreement has been executed, the seller holds legal title to the property subject to the equitable obligation to convey title but only upon payment of the full purchase price. *Laurin* v. *DeCarolis Constr. Co.,* 372 Mass. 688, 691 (1977). "Thus the rights of the purchaser are contract rights rather than rights of ownership of real property." *Ibid. McDonnell* v. *Quirk,* 22 Mass. App. Ct. 126, 130 (1986). See G. L. c. 204, § 1 (contracts for the sale of real estate made prior to the death of one of the parties may be specifically enforced by the survivor).

---

[4]In *Wasserman,* the court observed that there had been only two reported cases that provide exceptions to the "identity" theory. 414 Mass. at 174 n.3. Neither case is similar to the facts of this case.

The doctrine of equitable conversion, whereby the property may be deemed to have belonged to the buyers prior to the death of the testatrix, is not available here because there was no duty to convey title until the purchase price should be paid in full. *Baker* v. *Commissioner of Corps. & Taxn.*, 253 Mass. 130, 133-134 (1925). *Sondheim* v. *Fenton*, 326 Mass. 28, 30 (1950). The conveyance of the property did not occur until May 17, 1996, almost four months after the death of the testatrix.

To be sure, the plaintiff took subject to the equitable duty of the executor to convey title upon payment of the full purchase price, see *Lucier* v. *Williams*, 323 Mass. 458, 460 (1948), but that does not alter the fact that at the time the testatrix died, the property was in existence and owned by her.[5]

The result is that the devise to the plaintiff was not adeemed, and she is entitled to the net proceeds of the sale.

Judgment for the defendant is reversed. The case is remanded to the Probate and Family Court for further proceedings.

*So ordered.*

---

[5]*Lievi* v. *Sheridan*, 361 Mass. 621 (1972), relied on by the defendant, has no bearing in this case. In *Lievi*, the will directed the executors to sell the real property and to divide the proceeds among named persons. The trial judge ruled that the gift "was not a devise of real estate but a bequest of money to be divided as directed." *Id.* at 625. On the basis of that ruling, with which the Supreme Judicial Court agreed, the court concluded that the real estate was constructively converted into personalty upon the death of the testatrix, and that the legatees received their proportionate share of the proceeds of the sale. The claim of the appellants that the executor should be charged on his account with causing a delay in the sale of the real estate was rejected on the finding that the delay was caused by certain of the legatees. *Id.* at 624-625.